IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARLENE WISKUR            )
                          )
v.                        )         No. 2:15-0050
                          )         Judge Sharp/Bryant
SOCIAL SECURITY ADMINISTRATION  )

To:    The Honorable Kevin Sharp, Chief Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits, as provided under Title II of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 14). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I. Introduction

Plaintiff filed her application for benefits in March 2012, alleging disability onset as of October 20, 2010 (Tr. 15, 151) due to multiple impairments. (Tr. 155) Her

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

application was denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on April 8, 2014, when plaintiff appeared with counsel and gave testimony. (Tr. 34-68) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until June 4, 2014, when he issued a written decision finding plaintiff not disabled. (Tr. 15-26) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since October 20, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease with pain and limitation of motion (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift 15-20 pounds occasionally and 5-10 pounds frequently. She is able to sit three to four hours out of an eight-hour day and stand and/or walk for three to four hours out of an eight-hour day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 4, 1961 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age on March 4, 2011 (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2010, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17, 21, 24-26)

On July 31, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following record review is taken from the ALJ's decision:

She alleges depression and bipolar disorder, diagnosed by Courtney Armstrong (yet, as discussed above, treatment notes from Ms. Armstrong do not show an actual diagnosis of bipolar disorder). The claimant worked for many years with good wages at AT&T. Her husband, with whom she lives, is retired from AT&T. She stopped working in mid-2009 due to panic

3

attacks. She has undergone spinal surgery. She alleged great pain, yet she takes no prescription pain medications at the time of the hearing. She has undergone shoulder surgery.

Upon further questioning by her representative, she stated she worked often over sixty hours a week at AT&T when she was working. She worked several types of jobs there, including repair and installation technician, help-desk technician, and risk manager. She injured her back at work. She has received branch blocks for back pain. She takes Lamictal for obsessive-compulsive disorder tendencies such as obsessive folding of her husband's clothes and picking at sores on her face. After stopping work at AT&T in June 2009, the claimant and her husband relocated from Illinois to Tennessee.

* * *

In terms of degenerative disc disease, the claimant has suffered low back pain for many years (13E). Between 1995 and 2011, the claimant underwent three back surgeries, including a laminectomy and a discectomy. AP and lateral views in November 2010 of lumbar spine show mild left lumbar scoliosis with marked degenerative changes at L4-5 (7F). Mild changes are present at T 11-12 and L3-4. MRI of cervical spine show neural foraminal stenosis at C5 and central canal stenosis at C-6, mild to moderate without critical neural compression (13F). Lumbar spine x-ray in February 2011 shows degenerative disc changes, predominantly at L4-5 (Exhibit 7F).

An MRI of spine in late 2010 shows mild scoliosis and post-operative changes at L4-5 (Exhibit 8F). The claimant was encouraged to do physical therapy of stretching, back strengthening and conditioning about 2-3 times per week in March 2011 (Exhibit 8F). An EMG nerve conduction analysis in April 2012 with Dr. Randy Gaw shows no evidence of focal mono-neuropathy or denervation in left cervical paraspinal muscles.

The claimant attended a consultative physical exam with Dr. Keown in September 2012 (19F). The claimant complains of low back pain. It worsens with standing, walking, twisting and bending. She has had three back surgeries at the L4-5 level starting in 1995 with last being in 2001. She had a laminectomy in 2001. She reports pain radiating into legs. Her last imaging was about a year or more prior to the exam. She underwent right shoulder

> rotator cuff repair in April 2012. She stopped working in 2009 about the same time she married her husband. She was talkative, jovial and outgoing at the exam. She exhibits fluent speech and cognition. She is energetic and brisk in her movements. She wore a back brace. She had some restricted range of motion in shoulders. She did not complain of or admit any history of cervical spine discomfort.
>
> There is full range of motion in bilateral elbows, wrists, hands, hips, knees, and ankles. She had full range of motion in cervical spine. She had some restricted range of motion in lumbar spine. Straight leg raises are negative. Strength is graded 5/5 in hands bilaterally, aims, and lower extremities. No sensory impairment noted. Straightaway walk is unremarkable, as is tandem- step test, toe-lift, heel-walk, one-foot-stand, and Romberg test. Dr. Keown noted impressions of chronic low back pain status-post laminectomy and probable multi-level degenerative change and left shoulder pain.

(Tr. 22-23)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). While this is a deferential standard, it is not a trivial one; a finding of substantial evidence must "take into account whatever in the record fairly detracts from its

weight." Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). Nevertheless, the SSA's decision must stand if substantial evidence supports the conclusion reached, even if the record contains substantial evidence that would have supported an opposite conclusion. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

    1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
    2) A claimant who does not have a severe impairment will not be found to be disabled.
    3) A finding of disability will be made without consideration of vocational

6

> factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520, 416.920. "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry ... the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must

rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Plaintiff first argues that her back impairment meets or equals the requirements of Listing 1.04, governing disorders of the spine. Specifically, she contends that she meets the requirements of Listing 1.04A, as described below:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

In order to meet or medically equal a listing, all the criteria of the listing

8

must be established in the medical evidence, or fairly represented by comparable, documented findings of equal medical severity.  See Sullivan v. Zebley, 493 U.S. 521, 531 (1990).  Plaintiff argues that the medical evidence in her case compares favorably to the listing criteria, and that the ALJ's cursory finding of no listing-level impairment, without particular examination of the criteria of Listing 1.04A, is insufficient in light of the evidence.  However, plaintiff herself recognizes that in order to win reversal of the ALJ's finding on this point, she must point to specific evidence demonstrating that she could reasonably meet or equal all of the listing criteria.  (Docket Entry No. 13 at 9) (citing Smith-Johnson v. Comm'r of Soc. Sec., 579 Fed. Appx. 426, 432 (6th Cir. Sept. 8, 2014)).  "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three."  Smith-Johnson, 579 Fed. Appx. at 433.  Plaintiff attempts to make the required showing by pointing to evidence of her spinal stenosis and degenerative disc disease, documentation of her radicular pain, and evidence of muscle spasm.  (Docket Entry No. 13 at 8-9)  However, as noted by defendant, plaintiff cannot identify record evidence to document motor, sensory, or reflex loss, or positive straight leg raising test results.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify."  Zebley, 493 U.S. at 530.  Accordingly, plaintiff's argument that she should be found disabled under Listing 1.04A is without merit.

       Plaintiff next argues that the ALJ erred in determining that his RFC finding is consistent with an ability to perform work at the light level of exertion.  Specifically, plaintiff notes that the ability to stand and/or walk for only three-to-four hours out of an eight-hour workday is inconsistent with the amount of standing/walking that is required in

9

most light jobs, per the SSA's own policies. (Docket Entry No. 13 at 10) (citing Soc. Sec. Rul. 83-10, 1983 WL 31251 (S.S.A. Jan. 1, 1983)). Plaintiff further notes that the RFC finding establishes that she cannot do the full range of sedentary work due to her sitting restrictions, and queries how she could reasonably be found capable of light work when she cannot even perform her past sedentary jobs. The answer is that she could not reasonably be found capable of the full range of light work, or even a slightly reduced range of such work (as contemplated in the Medical-Vocational Rules which SSR 83-10 addresses), in the face of the postural restrictions identified in her RFC. Where, as here, "the claimant's ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations," the ALJ is forced to consult a vocational expert or other resource "[t]o determine the extent to which these limitations erode the unskilled light occupational base" (Tr. 25). See Soc. Sec. Rul. 83-12, 1983 WL 31253, at *2 (S.S.A. Jan. 1, 1983).[2] The vocational expert testified at plaintiff's hearing that the light occupational base was significantly eroded by the consideration that plaintiff could only perform jobs where she could alternate at will between sitting and standing, but that based on his professional experience, she could perform a number of cashier, counter clerk, and customer service jobs existing in the national economy. (Tr. 64-65) The ALJ properly relied on this testimony to

---

[2]"Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. In cases of considerably greater restriction(s), the occupational base will obviously be affected. In still other instances, the restrictions of the occupational base will be less obvious. Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. ... Vocational experts may testify for this purpose at the hearing and appeals levels."

establish that plaintiff could successfully adjust to other work in the economy, despite her impairment-related limitations (Tr. 25). See, e.g., Varley v. Sec'y of Health & Human Svcs., 820 F.2d 777, 779 (6th Cir. 1987). Thus, plaintiff's claim of error is without merit.

Lastly, plaintiff argues that the ALJ erred in finding that her complaints of disabling pain are not fully credible, as that finding lacks substantial evidentiary support. She argues that her level of daily activity is minimal, and not comparable to work activities; that the ALJ dismissed her credibility using boilerplate language and without reference to the medical evidence; and, that the ALJ ignored the factors which support her credibility, including her strong work ethic demonstrated by returning to work after three back surgeries, and her persistence in seeking medical treatment for her pain. However, it does not appear that the ALJ placed undue emphasis on plaintiff's daily activities or viewed them as approximating full-time work, nor did he rely on mere boilerplate to camouflage a conclusory credibility finding. Rather, the ALJ gave the following rationale for finding plaintiff less than fully credible:

> The claimant has described activities of daily living that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She is able to dress herself and take care of hygiene (18F). She can do some cooking. She can do some chores in the house. She often goes grocery shopping once a week. She and her husband share the laundry. She takes care of the bills. She watches television. She can drive a vehicle.
>
> The claimant has made inconsistent statements. The claimant reported extensive alcohol and drug abuse in the past at a psychological consultative exam in September 2012 (18F), yet she denied alcohol or drug use at the consultative exam with Dr. Keown, MD in September 2012 (19F). This is significant because notes from the Pain Center of Crossville show regular marijuana use before April 2012 when she agreed to stop using marijuana (Exhibit 12F). Inconsistent statements erode the overall reliability of the claimant's subjective reports.

> The claimant has undergone multiple spine surgeries; however, her most recent surgery on her back was in 2001, many years before the alleged onset date. She was able to work at substantial gainful levels after her last back surgery until she stopped work in 2009. This suggests she was able to function with her back impairment for many years.
>
> The claimant stated that she stopped working because after she married, she had her husband, and it was not as important for her to work (18F). In fact, at one point, she stated she was "retired from AT&T" (25F). This description of her work activity shows she stopped working for reasons unrelated to medical problems or impairment-related symptoms. At times in the record, the claimant stated she was "quite active" (25F).

(Tr. 23-24) The ALJ further noted that the opinion evidence is limited to the opinion of consultative examiner Dr. Keown, who opined that plaintiff was exertionally limited to a reduced range of light work, and non-examining consultant Dr. Fletcher, who opined that she had limitations that would allow a broader range of light work. (Tr. 24) The ALJ gave greater weight to Dr. Keown's opinion, finding plaintiff significantly limited by her impairments, but not so significantly limited as her testimony would indicate. This credibility determination is firmly within the ALJ's province and not to be decided anew in this Court, where it is due "great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[3] Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003) (citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)). Such credibility findings are not to be disturbed "absent compelling reason," Smith v. Halter, 307 F.3d 377 (6th Cir. 2001), and no

---

[3] The ALJ here noted that plaintiff "appeared healthy" at the hearing, "entered and exited the hearing room without any observable signs of difficulty or discomfort," and "did stand during the hearing, but while sitting or standing, she did not exhibit any signs of discomfort or pain." (Tr. 21)

such reason exists in this case. Accordingly, the undersigned finds no error here.

In sum, the decision of the ALJ is supported by substantial evidence on the record as a whole. That decision should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 31st day of August, 2016.

                                                          s/ John S. Bryant  
                                                          JOHN S. BRYANT  
                                                          UNITED STATES MAGISTRATE JUDGE